■ AMITY ASSOCIATES, INC., Appellant, v. AMITY FARMS SHOPPING CENTER, INC., Respondent, and SAMUEL J. WISHNER, Impleaded-Defendant-Appellant.— In an action by the assignee of a purchaser to recover from the seller, defendant Amity Farms Shopping Center, Inc., the down payment of $10,000 under a contract, dated October 1, 1957, for the purchase and sale of two parcels of land in the Town of Babylon, County of Suffolk, and to declare that the seller has no right to the additional down payment of $6,500 held in escrow by the purchaser's attorney, Harold J. Morse, and for other relief, in which the seller has impleaded, as a defendant, Samuel J. Wishner, plaintiff's sole stockholder, on the ground that he dominated the plaintiff corporation and used it as his alter ego, and in which the seller asserted two counterclaims: one against him and plaintiff for $30,000 based on plaintiff's breach of said contract, and another against him alone for the same sum based on his tortious conduct in intentionally and without justification inducing plaintiff to breach said contract (both of which counterclaims were withdrawn and discontinued during trial), plaintiff and the impleaded defendant Wishner appeal from so much of a judgment of the Supreme Court, Suffolk County, rendered August 3, 1959, after a nonjury trial, as dismisses the complaint. Judgment insofar as appealed from by plaintiff affirmed, with costs. Appeal by the impleaded defendant dismissed, without costs. The counterclaims against him were withdrawn and one decretal paragraph of the judgment directs their dismissal. No appeal has been taken from that portion of the judgment. He is not a party aggrieved by the judgment insofar as it directs the dismissal of the complaint and insofar as it is now being reviewed. Consequently, his appeal from the judgment must be dismissed (Civ. Prac. Act, § 557.). The contract provides: (1) that in partial payment of the purchase price the purchaser would try to obtain a first mortgage loan of $250,000 on one of the parcels, that if the purchaser was able to obtain a

loan in a lesser amount the seller would accept a purchase-money mortgage for the difference, and that if the purchaser was unable to obtain any mortgage loan then it could elect to cancel the contract; and (2) that the title to be conveyed would be such as a certain title company would "approve and insure". Thereafter at the closing the purchaser delivered to the seller a written statement (prepared the day before) in which the purchaser demanded the return of the $10,000 deposit and a release to the $6,500 being held in escrow. From this written statement of the purchaser and from its position at the closing it appears that it elected to cancel the contract on two grounds: (1) that it, the purchaser, has been unable to obtain any commitment whatever for a mortgage loan and that it therefore "hereby exercise[s] its option to cancel the contract;" and (2) that by reason of several stated exceptions in the title company's report the seller "is unable to convey a good and marketable title in accordance with the contract" and, hence, the title is not one which the title company will insure. The purchaser thus unqualifiedly rejected the title and cancelled the contract without attempting to make any tender of performance on its part; without showing that it was able, ready and willing to perform; without obtaining a waiver of tender of performance; and without demanding performance of the contract by the seller. There is evidence that the purchaser did not attempt in good faith to obtain the mortgage loan; that such a loan was in fact available to it through the efforts of the seller; and that all the title company exceptions to the title were readily curable — time not being of the essence of the contract. Whether the loan was actually available or whether the defects were actually curable, however, need not be determined. The point is that these objections did not then appear to be insurmountable, especially if the seller were allowed a reasonable time. Under such circumstances the purchaser is precluded from recovering by reason of its own failure to make any actual tender of performance and by reason of its failure to establish that it was ready, willing and able to perform (cf. *Weinheimer* v. *Ross*, 205 N. Y. 518; *Wija Bldg. Corp.* v. *Kay-Wei Bldg. Corp.*, 223 App. Div. 848, affd. 249 N. Y. 575; *Fleischer* v. *Lockwood Lbr. Co.*, 258 App. Div. 900; *Offner* v. *Engelen*, 200 Misc. 53). Our recent decision (*Kopp* v. *Barnes*, 10 A D 2d 532) is not to the contrary. There, at the closing the purchaser also objected to the title on the ground that it was not one which the title company would insure, as required by the contract. But the purchaser there actually tendered the purchase price and demanded performance by the seller in accordance with the terms of the contract, while the seller took the arbitrary position that his title was then good and insurable — that the purchaser either take it "as is" or leave it. Here, however, the purchaser not only failed to make a similar tender but categorically repudiated the contract and, in advance, rejected its performance by the seller. Indeed, here any attempted performance thereafter by the seller would have been futile; the purchaser already had taken an irrevocable stand. His position is analogous to the seller's position in the *Kopp* case. Nolan, P. J., Beldock, Ughetta, Pette and Brennan, JJ., concur. [21 Misc 2d 358.]